**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **HAARSLEV, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION** |
| | ) | |
| v. | ) | No. 23-2569-KHV |
| | ) | |
| **TOM'S METAL ENTERPRISES, LLC** | ) | |
| **d/b/a INDUSTRIAL METAL** | ) | |
| **ENTERPRISES, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**MEMORANDUM AND ORDER**

On November 30, 2023, in the District Court of Johnson County, Kansas, plaintiff filed suit against Tom's Metal Enterprises, LLC d/b/a Industrial Metal Enterprises, LLC ("IME"), alleging breach of contract (Count I), civil conspiracy (Count II), fraudulent misrepresentation (Count III), tortious interference with contract (Count IV) and unjust enrichment (Count V). See Petition (Doc. #1-1) filed December 26, 2023. On December 26, 2023, defendant removed the case to federal court based on diversity jurisdiction. See Notice Of Removal (Doc. #1). This matter comes before the Court on Defendant's Motion To Dismiss (Doc. #6) filed January 2, 2024. For reasons stated below, the Court overrules defendant's motion.

**Legal Standard**

When defendant files a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), Fed. R. Civ. P., plaintiff bears the burden to establish personal jurisdiction over defendant. Rockwood Select Asset Fund XI (6)-1, LLC v. Devine, Millimet & Branch, 750 F.3d 1178, 1179–80 (10th Cir. 2014). At these preliminary stages of litigation, plaintiff's burden to prove personal jurisdiction is light. AST Sports Sci., Inc. v. CLF Distrib. Ltd., 514 F.3d 1054,

1056 (10th Cir. 2008). To defeat the motion, plaintiff need only make a prima facie showing of personal jurisdiction. Id. Plaintiff can do so by showing, through affidavit or other written materials, facts that if true would support jurisdiction over defendant. Id; see also Wenz v. Memery Crystal, 55 F.3d 1503, 1508 (10th Cir. 1995) (plaintiff can support jurisdictional allegations "by competent proof"). When evaluating the prima facie case, the Court must resolve all factual disputes in favor of plaintiff. AST Sports, 514 F.3d at 1056.

## Factual Background

Plaintiff's petition in Johnson County alleges as follows:

Plaintiff is a North Carolina corporation that designs, manufactures, sells and installs equipment for the food, food byproducts and pet food industries. Plaintiff has its principal place of business in Lenexa, Kansas and is registered to do business in Kansas. Plaintiff employed Michael Chapple as Sales & Project Engineer. Chapple acted as project manager on the DemKota Project, a manufacturing and installation project in Aberdeen, South Dakota.

Defendant, an Idaho limited liability company with its principal place of business in Blackfoot, Idaho, is in the business of manufacturing and installing commercial food and food byproducts equipment. Before plaintiff hired him, Chapple worked in Idaho and formed a connection with defendant.

During Chapple's employment with plaintiff, Chapple contacted defendant to produce certain pieces of food processing equipment for plaintiff for the DemKota Project. On March 23, 2022, the parties entered into Purchase Order #17003 ("Purchase Order"), a contract under which defendant manufactured screw conveyors for the DemKota Project for $800,000.[1] IME then

---

[1] Defendant later submitted change orders to plaintiff which increased the total amount payable under the Purchase Order to $814,124.98.

provided plaintiff the work and materials and submitted invoices related to the Purchase Order.

At Chapple's direction, but without plaintiff's knowledge, defendant added 10 per cent to the invoices it sent plaintiff for the DemKota Project. Defendant did not disclose the 10 per cent mark-up on its invoices. Between March and September of 2022, Chapple approved, and plaintiff paid, four invoices from defendant which related to the Purchase Order and included the undisclosed 10 per cent mark-up. In total, plaintiff paid an additional $841,844.10 ($1,655,969.08 in total) for work and materials related to the Purchase Order.

After plaintiff paid defendant's invoices related to the Purchase Order, defendant paid Jeff Muir the additional funds which it had received because of the 10 per cent mark-up. At all relevant times, Muir worked for either himself, his company, JLM Management, LLC or Christensen Machine, Inc. Defendant did not employ Muir at any relevant time. In total, defendant paid Muir $128,000 of the funds which it had received from plaintiff—even though Muir provided no benefit or value to plaintiff.

On November 30, 2023, plaintiff filed suit against defendant in Johnson County, alleging breach of contract (Count I), civil conspiracy (Count II), fraudulent misrepresentation (Count III), tortious interference with contract (Count IV) and unjust enrichment (Count V). See Petition (Doc. #1-1). On December 26, 2023, defendant removed the case to federal court.

On January 2, 2024, defendant filed a motion to dismiss for lack of personal jurisdiction. See Defendant's Motion To Dismiss (Doc. #6).

## **Analysis**

For the Court to exercise personal jurisdiction in a diversity action, plaintiff must show that personal jurisdiction is proper under the laws of the forum state and that doing so comports with the due process requirements of the United States Constitution. See Newsome v. Gallacher, 722

F.3d 1257, 1264 (10th Cir. 2013).  The Kansas long-arm statute permits the exercise of any jurisdiction that is consistent with the due process requirements of the United States Constitution.  See Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop., 17 F.3d 1302, 1304–05 (10th Cir. 1994); see also K.S.A. § 60-308(b)(1)(L).  Accordingly, the Court need not conduct a separate personal jurisdiction analysis under Kansas law, and instead may proceed directly to the due process inquiry under federal law.  See Niemi v. Lasshofer, 770 F.3d 1331, 1348 (10th Cir. 2014) (where long-arm statute confers maximum jurisdiction consistent with Due Process Clause, statutory inquiry effectively collapses into constitutional analysis).

The due process analysis requires the Court to determine (1) whether defendant has "minimum contacts with the forum state such that [it] should reasonably anticipate being hailed into court there" and (2) if defendant's actions establish minimum contacts, whether the exercise of personal jurisdiction over it "offends traditional notions of fair play and substantial justice." AST Sports, 514 F.3d at 1057.  To satisfy the "minimum contacts" standard, plaintiff can establish that the Court has either (1) specific jurisdiction or (2) general jurisdiction.  Rockwood Select, 750 F.3d at 1179.

Plaintiff alleges that this Court may exercise specific personal jurisdiction over defendant under K.S.A. § 60-308(b) because it transacted business in Kansas and committed tortious acts that caused injury to plaintiff in Kansas and resulted in harmful effects felt in Kansas.  See K.S.A. § 60-308(b)(A), (B).  In addition, in Plaintiff's Suggestions In Opposition To Defendant's Motion To Dismiss (Doc. #10) filed January 23, 2024, plaintiff argues that defendant has "systematic and continuous" contact with plaintiff in Kansas.  See id. at 6.  Because plaintiff alleges that the Court has jurisdiction over defendant pursuant to K.S.A. § 60-308(b), and K.S.A. § 60-308(b)(2) confers general jurisdiction over nonresidents whose contacts with Kansas are "substantial, continuous and

systematic," the Court interprets plaintiff's complaint as alleging both specific and general jurisdiction and analyzes both grounds for jurisdiction.

     A.     General Jurisdiction

Plaintiff argues that the Court has general jurisdiction because (1) defendant had "systematic and continuous contact" with plaintiff in Kansas, (2) defendant submitted to plaintiff's headquarters in Kansas purchase order agreements and invoices, (3) defendant received payments and materials shipments from plaintiff's headquarters in Kansas, (4) defendant exchanged project drawings with plaintiff's employees in Kansas and (5) defendant hosted plaintiff's employees from Kansas on site visits in other states. Suggestions In Opposition (Doc. #10) at 6, 11. Plaintiff submits in an affidavit from its president, Troels Svendsen, that (1) between March 24 and September 8, 2022, defendant addressed and sent four invoices to plaintiff's headquarters in Kansas, (2) defendant received payments from plaintiff in Kansas, (3) defendant issued quotes and estimates to plaintiff in Kansas, (4) defendant exchanged technical drawings with plaintiff, which is based in Kansas, (5) defendant accepted shipments from plaintiff's headquarters in Kansas, (6) defendant coordinated site visits at its facility with plaintiff's employees from Kansas and (7) defendant had daily interactions with plaintiff's employees, including Chapple, who worked out of plaintiff's headquarters in Kansas. Affidavit of Troels Svendsen (Doc. #10-1), ¶¶ 6–18.

Courts may exercise general personal jurisdiction over a nonresident defendant "if its contacts with the State are so continuous and systematic that the person is essentially at home in the State." XMission, L.C. v. Fluent LLC, 955 F.3d 833, 840 (10th Cir. 2020) (citation omitted). General personal jurisdiction in a forum other than defendant's place of incorporation or principal place of business will exist only in "exceptional case[s]" where defendant's operations in the forum are "so substantial and of such a nature as to render the corporation at home in that State." Daimler

AG v. Bauman, 571 U.S. 117, 137 n.19 (2014).  To evaluate whether a business's contacts with the forum state are so systematic and continuous that the Court may exercise general jurisdiction over the business, courts consider (1) whether the business solicits business in the state through a local office or agents; (2) whether the business sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state through advertisements or bank accounts; and (4) the volume of business it conducts in the state.  Trierweiler v. Croxton Trench Holding Corp., 90 F.3d 1523, 1533 (10th Cir. 1996) (citation omitted).

Here, defendant does not have an office or agent in Kansas and has never sent an agent into the state for business purposes.  The first two factors therefore weigh heavily against the Court's exercise of general jurisdiction over defendant.  Neither party has addressed whether defendant otherwise holds itself out as doing business in Kansas through advertisements or bank accounts.  Plaintiff nevertheless argues that the volume of business which defendant conducts with plaintiff's headquarters in Kansas and its employees that are based in Kansas warrants the exercise of general jurisdiction.  Suggestions In Opposition (Doc. #10) at 6.  The Court disagrees.

Revenue earned from a business in a particular state might suffice to establish general jurisdiction in some circumstances, but the Court must analyze the volume of defendant's business in Kansas in the context of its operations as a whole.  See Daimler, 571 U.S. at 117 n.20 (general jurisdiction inquiry does not focus solely on magnitude of defendant's in-state contacts; general jurisdiction calls for appraisal of corporation's activities in their entirety, nationwide and worldwide).  Plaintiff does not dispute that defendant has never owned property in Kansas, has never shipped its products there and has never performed services in Kansas.  See Declaration Of Chad Mitchell (Doc. #6-1), ¶¶ 6–8, 11–12.  Given that background, this is not an "exceptional

case" where defendant's operations in Kansas are so substantial as to render it "at home" in Kansas. See Daimler, 571 U.S. at 137. Accordingly, the Court cannot exercise general personal jurisdiction over defendant.

B. Specific Jurisdiction

Plaintiff argues that this Court may exercise specific personal jurisdiction over defendant pursuant to the Kansas long-arm statute because defendant (1) transacted business within the state, (2) entered into a contract with plaintiff, a resident of Kansas, to be performed in whole or in part by plaintiff in the state, (3) committed tortious acts within the state and (4) participated in a civil conspiracy with Chapple while Chapple was located in Kansas. Suggestions In Opposition (Doc. #10) at 5–10; see also K.S.A. § 60-308(b)(1)(A), (B), (E).

Courts may exercise specific personal jurisdiction over a defendant when it "purposely directed" its activities at residents of the forum state, and plaintiff's alleged injuries "arise out of" the forum-related activities. Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1071 (10th Cir. 2008). For the Court to find specific jurisdiction, plaintiff must allege "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985). The aim of the "purposeful direction" doctrine is to ensure that defendant is not bound to account for merely "random, fortuitous, or attenuated contacts" with the forum state. Id. (quotations and citation omitted).

The Tenth Circuit has identified several frameworks for determining whether an out-of-state defendant's contacts with the forum satisfy the "purposeful direction" requirement. In mixed torts and contract cases, the Tenth Circuit has applied the "effects test." Eighteen Seventy, LP v. Jayson, 32 F.4th 956, 966–67 (10th Cir. 2022) (discussing Calder v. Jones, 465 U.S. 783 (1984));

id. at 966 n.9 (discussing Dental Dynamics, LLC v. Jolly Dental Grp., LLC, 946 F.3d 1223, 1229 n.3 (10th Cir. 2020), which applies effects test to mixed tort and contract case). The Tenth Circuit applies another framework to claims of conspiracy. See Melea, Ltd. v. Jawar SA, 511 F.3d 1060, 1069 (10th Cir. 2007).

Here, plaintiff asserts tort, contract and conspiracy claims. The Court first analyzes whether it has personal jurisdiction under the effects test with regard to plaintiff's tort and contract claims.

1. Effects Test To Determine Defendant's Purposeful Direction

The "effects test," set forth in Dudnikov, is used to determine whether defendant purposefully directed its activities at the forum state. Dudnikov, 514 F.3d at 1072. Under this test, plaintiff can establish purposeful direction by showing that defendant took (1) an intentional action, that was (2) expressly aimed at the forum state with (3) knowledge that the brunt of the injury would be felt in the forum state. Id. To find personal jurisdiction, the test requires more than just harm which plaintiff suffered in the forum state; defendant's conduct must also connect it "to the forum in a meaningful way." Butler v. Daimler Trucks N. Am., LLC, 433 F. Supp. 3d 1216, 1233 (D. Kan. 2020) (quoting Heffington v. Puleo, Case No. 17-1192-EFM, 2018 WL 690995, at *5 (D. Kan. Feb. 2, 2018)).

Mere injury to a forum resident or knowledge of plaintiff's residence in the forum state, without more, cannot establish defendant's express aim towards the forum state. Walden v. Fiore, 571 U.S. 277, 289, 290 (2014); see also Eighteen Seventy, 32 F.4th 956 at 971. To satisfy this element, the forum state itself must be the focal point of defendant's conduct. Shrader v. Biddinger, 633 F.3d 1235, 1244 (10th Cir. 2011) (quoting Dudnikov, 514 F.3d at 1074 n.9)). In other words, the Tenth Circuit centers the express aiming analysis on whether defendant focused

on or directed its allegedly intentional conduct at the forum state—not on whether defendant's wrongful conduct was focused on or directed at the interests of plaintiff who resides in or otherwise has significant connections to the forum state.  Eighteen Seventy, 32 F.4th at 972.

Plaintiff alleges that defendant (1) breached its contractual duties to plaintiff by issuing invoices that improperly included undisclosed mark-ups (Count I); (2) intentionally made false statements concerning material facts in the invoices it submitted to plaintiff (Count III); (3) tortiously interfered with plaintiff's contracts by overbilling it (Count IV); and (4) knowingly received the benefit of plaintiff's overpayments on its invoices (Count V).  These allegations are sufficient to satisfy the first element of the effects test, i.e. that defendant took intentional action.

Under the second element, a defendant must expressly aim its intentional actions at the forum state.  Dudnikov, 514 F.3d at 1072.  Plaintiff argues that defendant aimed its conduct at Kansas because it (1) entered into a contract with a Kansas resident, (2) communicated daily with plaintiff in Kansas, (3) exchanged technical drawings with plaintiff from its Kansas office and (4) submitted four invoices to plaintiff's forum state location.  While the mere existence of a contract with a Kansas citizen is insufficient to establish the requisite minimum contacts in the forum state, the Court looks to the parties' "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing."  See Burger King, 471 U.S. at 478; Marcus Food Co. v. DiPanfilo, 671 F.3d 1159, 1166 (10th Cir. 2011).  Here, plaintiff's allegations provide no indication that the parties engaged in prior contract negotiations in Kansas, that either party contemplated future consequences in Kansas or that the terms of the contract required payment or other performance in Kansas.  Regarding the parties' actual course of dealing, however, plaintiff alleges that defendant (1) sent invoices to plaintiff's office in Kansas, (2) exchanged technical drawings of products to and from plaintiff's forum state

location; and (3) communicated daily with plaintiff's employees in Kansas.  See Petition (Doc. #1-1), ¶¶ 24, 26, 30, 32; Svendsen Affidavit (Doc. #10-1), ¶¶ 7, 13, 17.  Because plaintiff's contract and tort claims center on the invoices that defendant sent to plaintiff in Kansas and the parties' related communications, plaintiff has sufficiently alleged the express aiming element.

Finally, plaintiff has met the third element of the effects test which "concentrates on the consequences of the defendant's actions—where was the alleged harm actually felt by plaintiff." Dudnikov, 514 F.3d at 1075.  Plaintiff alleges that it suffered financial harm in Kansas from defendant's alleged submission of invoices that included undisclosed mark-ups.  Although defendant submits affidavits of its owners, which insist that they believed plaintiff was a Denmark corporation, defendant does not dispute that it sent invoices to plaintiff's Kansas office, that it received allegedly inflated payments from that same office and that it knew that plaintiff had a Kansas office.  See Mitchell Declaration (Doc. #6-1), ¶ 16; David Declaration (Doc. #6-2), ¶ 16. Further, the parties' allegations contain no indication that defendant interacted with plaintiff outside of its office in Kansas.  Together, these facts make it more than "mere[ly] foreseeable" that defendant knew plaintiff would suffer the brunt of its injury in Kansas.  See Dudnikov, 514 F.3d at 1077 ("We surely agree that under Calder the mere foreseeability of causing an injury in the forum state is, standing alone, insufficient to warrant a state exercising its sovereignty over an out-of-state defendant.") (discussing Calder v. Jones, 465 U.S. 783 (1984)).  Accordingly, plaintiff has met the third element of the effects test.

In summary, for purposes of its tort, contract and unjust enrichment claims, plaintiff has satisfied the "effects test" and shown that defendant purposefully directed its activities at the forum

state.[2]

### 2. Conspiracy Theory Of Specific Jurisdiction

Regarding its conspiracy claim, plaintiff contends that the Court may exercise specific personal jurisdiction because defendant conspired with Chapple, who approved invoices out of plaintiff's headquarters in Kansas, to mark up IME invoices to plaintiff by 10 per cent and direct the extra funds to Muir. Defendant does not directly respond to plaintiff's conspiracy theory of jurisdiction.

Under a conspiracy theory of personal jurisdiction, the Tenth Circuit states that "[t]he existence of a conspiracy and acts of a co-conspirator within the forum may, in some cases, subject another co-conspirator to the forum's jurisdiction." Melea, 511 F.3d at 1069; see also Toytrackerz LLC v. Koehler, No. CIV.A. 08-2297-GLR, 2009 WL 1505705, at *17 (D. Kan. May 28, 2009) (court may obtain jurisdiction as to all conspirators "if one conspirator commits acts in Kansas in furtherance of the conspiracy and that conspirator falls under the long-arm statute."). However, "for personal jurisdiction based on a conspiracy theory to exist, the plaintiff must offer more than bare allegations that a conspiracy existed, and must allege facts that would support a prima facie showing of conspiracy." Melea, 511 F.3d at 1069 (internal quotations omitted). Plaintiff successfully makes a prima facie showing of conspiracy "[w]hen the conspiracy and its overt acts are pleaded with particularity." Dodson Int'l Parts, Inc. v. Altendorf, 101 F. Supp. 2d 1248, 1254 (D. Kan. 2001).

The Tenth Circuit has cautioned that "to hold that one co-conspirator's presence in the

---

[2] Because plaintiff alleges that defendant accepted the benefits of plaintiff's alleged overpayments under the parties' contract, plaintiff has established that defendant purposefully established minimum contacts with Kansas. See Cal Caulfield & Co. v. Colonial Nursing Homes, Inc., 642 F. Supp. 777, 780 (D. Kan. 1986) (applying same minimum contacts analysis to plaintiff's claims for breach of contract and unjust enrichment).

forum creates jurisdiction over other co-conspirators threatens to confuse the standards applicable to personal jurisdiction and those applicable to liability." Melea, 511 F.3d at 1070.  Therefore, in addition to pleading a prima facie conspiracy, due process requires that defendant have minimum contacts with the forum.  Id.  "[A] co-conspirator's presence within the forum might reasonably create the 'minimum contacts' with the forum necessary to exercise jurisdiction over another co-conspirator if the conspiracy is directed towards the forum, or substantial steps in furtherance of the conspiracy are taken in the forum."  Id.

Because plaintiff alleges that Chapple approved the invoices and payments to defendant from Kansas, plaintiff sufficiently alleges that a co-conspirator committed acts in furtherance of the alleged conspiracy in the forum state.  See Petition (Doc. #1-1), ¶ 35; see also Svendsen Affidavit (Doc. #10-1), ¶ 18 (Chapple worked out of plaintiff's headquarters in Kansas).  Plaintiff has also alleged a prime facie claim of conspiracy.  To allege a claim for civil conspiracy under Kansas law, plaintiff must allege (1) the involvement of two or more persons; (2) an object to accomplish; (3) a meeting of the minds in the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof.  Mid-Continent Anesthesiology, Chartered v. Bassell, 61 Kan. App. 2d 411, 504 P.3d 1069, 1084 (Kan. Ct. App. 2021) (quoting State ex rel. Mays v. Ridenhour, 248 Kan. 919, 811 P.2d 1220, 1226 (1991)).  Plaintiff's complaint alleges (1) the involvement of Chapple and defendant, (2) that Chapple and defendant sought to mark up defendant's invoices to plaintiff by 10 per cent and conceal the mark-up, (3) that Chapple "directed" defendant to mark the invoices up and that defendant "agreed" to add the mark up, (4) that defendant submitted four invoices to plaintiff that contained mark-ups and (5) plaintiff suffered financial harm as a result thereof.  Petition (Doc. #1-1), ¶¶ 14, 19.  Plaintiff has therefore alleged facts that support a prima facie claim of conspiracy.

-13-

The Court therefore overrules defendant's motion to dismiss plaintiff's claims for lack of personal jurisdiction.

**IT IS THEREFORE ORDERED** that Defendant's Motion To Dismiss (Doc. #6) filed January 2, 2024 is **OVERRULED.**  The stay (Doc. #17) is hereby lifted and the parties shall inform Magistrate Judge Rachel E. Schwartz of this ruling.

Dated this 11th day of March, 2024 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge