**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| HAARSLEV, INC., | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | |
| v. | ) | No. 23-2569-KHV |
| | ) | |
| TOM'S METAL ENTERPRISES, LLC d/b/a INDUSTRIAL METAL ENTERPRISES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| HAARSLEV, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 23-2575-KHV |
| | ) | |
| CHRISTENSEN MACHINE, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| HAARSLEV, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 24-2003-KHV |
| | ) | |
| MICHAEL CHAPPLE, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the Third Amended Joint Motion For Transfer Of Venue (Doc. #43) which Christensen Machine Inc. ("CMI"), Tom's Metal Enterprises, LLC ("IME") and Michael Chapple filed on June 21, 2024. For reasons stated below, the Court overrules defendants' motion to transfer.

**Legal Standard**

Transfer of venue is governed by 28 U.S.C. § 1404. The Court may transfer an action "[f]or the convenience of parties and witnesses, in the interest of justice, . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "[V]enue is not limited to the district with the *most* substantial events or omissions," but may lie "in multiple judicial districts as long as a substantial part of the underlying events took place in those districts." Emps. Mut. Cas. Co. v. Bartile Roofs, Inc., 618 F.3d 1153, 1166 (10th Cir. 2010) (emphasis in original) (citing 28 U.S.C. § 1391(a)(2)). The decision to transfer lies in the sound discretion of the Court, based on an "individualized, case-by-case consideration of convenience and fairness." Texas E. Transmission Corp. v. Marine Office-Appleton & Cox Corp., 579 F.2d 561, 567 (10th Cir. 1978).

In considering whether to transfer, courts determine whether plaintiff could have brought the case in the proposed transferee district and whether the "competing equities" weigh in favor of transfer. Hustler Magazine, Inc. v. U.S. Dist. Ct. for the Dist. of Wyo., 790 F.2d 69, 71 (10th Cir. 1986). The Tenth Circuit has directed district courts to weigh the following discretionary factors: (1) plaintiff's choice of forum; (2) accessibility of witnesses and other sources of proof, including availability of compulsory process to insure attendance of witnesses; (3) costs of making necessary proof; (4) questions as to enforceability of a judgment if one is obtained; (5) relative advantages and obstacles to a fair trial; (6) difficulties that may arise from congested dockets; (7) possibility of conflict of laws questions arising; (8) advantage of having a local court determine questions of local law; and (9) all other considerations of a practical nature that make a trial easy, expeditious and economical. Bartile, 618 F.3d at 1167. The party seeking to transfer bears the burden of establishing that the existing forum is inconvenient. Id.

**Factual And Procedural Background**

**I.     Procedural History**

On November 30, 2023, in the District Court of Johnson County, Kansas, plaintiff filed four lawsuits against five separate defendants: (1) against IME, alleging breach of contract, civil conspiracy, fraudulent misrepresentation, tortious interference with contract and unjust enrichment;[1] (2) against CMI, alleging breach of contract, unjust enrichment, negligent misrepresentation and fraudulent misrepresentation;[2] (3) against Chapple, alleging tortious interference with business expectancy, tortious interference with contract, civil conspiracy, breach of contract, breach of fiduciary duty and repayment of wages;[3] and (4) against Jeff Muir and JLM Management, LLC ("JLM"), alleging tortious interference with business expectancy, tortious interference with contracts, civil conspiracy and unjust enrichment.[4]

On March 25, 2024, the Court dismissed plaintiff's claims against Muir and JLM for lack of personal jurisdiction. See Memorandum And Order And Judgment in Haarslev, Inc. v. Jeff Muir and JLM Management, LLC, No. 23-2567 (D. Kan.), ECF Docs. 19 and 20. On April 24, 2024, Magistrate Judge Rachel E. Schwartz ordered that the three remaining cases against CMI, IME and Chapple be consolidated for purposes of discovery. Order (Doc. #26). On June 12, 2024, plaintiff filed suit against Jeff Muir and JLM in the United States District Court for the District of

---

[1]    See Petition in Haarslev, Inc. v. Tom's Metal Enterprises LLC, No. 23-2569 (D. Kan.), ECF Doc. 1-1.

[2]    See Petition in Haarslev, Inc. v. Christensen Machine, Inc., No. 23-2575 (D. Kan.), ECF Doc. 1-1.

[3]    See Petition in Haarslev, Inc. v. Chapple, No. 24-2003 (D. Kan.), ECF Doc. 1-1.

[4]    See Petition in Haarslev, Inc. v. Jeff Muir and JLM Management, LLC, No. 23-2567 (D. Kan.), ECF Doc. 1-1.

Idaho and brought substantially the same claims, see Petition in Haarslev, Inc. v. Jeff Muir and JLM Management, LLC, No. 24-00278 (D. Idaho), ECF Doc. 1.

On June 21, 2024, CMI, IME and Chapple jointly filed a motion to transfer plaintiff's three cases against them to the District of Idaho.

## II.     Plaintiff's Allegations

Plaintiff's complaints against IME, CMI and Chapple allege as follows:

Plaintiff is a North Carolina corporation that designs, manufactures, sells and installs equipment for the food, food byproducts and pet food industries. Plaintiff has its principal place of business in Lenexa, Kansas. Plaintiff employed Chapple as Sales & Project Engineer. Chapple acted as project manager for plaintiff on the Demkota Beef Project in Aberdeen, South Dakota (the "Demkota Project").

CMI and IME each are in the business of manufacturing and installing commercial food and food byproducts equipment. IME is an Idaho limited liability company with its principal place of business in Blackfoot, Idaho. CMI is an Idaho corporation with its principal place of business in Heyburn, Idaho. Before plaintiff hired him, Chapple worked in Idaho where he formed a connection with IME and its then employee, Muir.

Both CMI and IME contracted with plaintiff to produce certain pieces of food processing equipment for plaintiff for the Demkota Project. At Chapple's directions, but without plaintiff's knowledge, CMI added 10 per cent to the invoices it sent plaintiff for the Demkota Project. CMI did not disclose the 10 per cent mark-up on its invoices. Chapple approved, and plaintiff paid, four invoices from CMI which included the undisclosed 10 per cent mark-up. After plaintiff paid CMI's invoices related to the Demkota Project, CMI paid Muir and JLM the additional funds which it had received because of the mark-up.

-4-

While working for plaintiff, Chapple also sought out IME to produce certain pieces of equipment for plaintiff for the Demkota Project. On the invoices that IME issued to plaintiff for the Demkota Project, IME (1) intentionally kept its descriptions vague to prevent plaintiff from knowing what defendant was charging it for, (2) charged plaintiff an unreasonable profit margin, (3) included undisclosed mark-ups and (4) asked plaintiff to pay for items that are typically not compensable under a time and materials contract, including a sales commission and salary for Muir.

### III.   Affidavits Submitted By Defendants In Support Of Transfer

In support of their motion to transfer, defendants submit three affidavits from the following individuals: (1) Tom Clayville, CMI's senior vice president of consulting and sales, (2) Chad Mitchell, co-owner of IME and (3) Rick David, co-owner of IME.[5]  The affidavits contain the following material facts:

CMI is a family-owned business that has 20 employees. From its office and machine shop in Heyburn, Idaho, CMI (1) drafted its quote for plaintiff for the Demkota Project, (2) performed fabrication work for plaintiff and (3) sent completed parts to Demkota Beef in Aberdeen, South Dakota. In April of 2022, plaintiff terminated CMI's work on the Demkota Project after CMI allegedly produced a defective part. Muir and employees from Integra Mechanical Service, LLC ("Integra"), a vendor of both plaintiff and CMI, came to CMI's machine shop in Idaho to retrieve CMI's unfinished work. Defending the case in Kansas poses a financial burden to CMI.

IME performed all of its work for plaintiff from Idaho and South Dakota and never shipped

---

[5]  IME submitted the Mitchell and David affidavits with its Motion To Dismiss in Haarslev, Inc. v. Tom's Metal Enterprises LLC, No. 23-2569 (D. Kan.), ECF Doc. 6 filed January 2, 2024. Because defendants cite both affidavits in their motion to transfer, the Court considers them in this context.

-5-

any its products for plaintiff to Kansas. Plaintiff paid IME for its work on the Demkota Project by submitting payments to IME in Idaho.

## Analysis

Under 28 U.S.C. § 1404(a), CMI, IME and Chapple jointly request that the Court transfer plaintiff's cases against them to the District of Idaho. Defendants contend that the Court should transfer plaintiff's cases because (1) the facts giving rise to plaintiff's claims have no material relation or significant connection to plaintiff's chosen forum, the District of Kansas; and (2) the relevant factors in deciding whether to transfer under 28 U.S.C. § 1404(a) favor transfer, including the accessibility of witnesses and other sources of proof, costs of making proof, choice of law questions and other practical considerations. See Bartile, 618 F.3d at 1167. Plaintiff opposes defendants' request and argues that plaintiff has not established that any factors weigh in favor of transfer.

Under Section 1404(a), the Court has discretion to transfer if (1) the transferee court is one where plaintiff could have originally filed suit and (2) the convenience of the parties and witnesses and the interest of justice favor transfer. 28 U.S.C. § 1404(a). As to Chapple, the Court concludes that Chapple has not satisfied either prong. As to CMI and IME, the Court concludes that although the first prong is satisfied, the second prong is not. Accordingly, transfer is not appropriate.

**I.      Whether Plaintiff Could Have Filed The Suits In The Transferee Court**

        A.        Plaintiff's Suit Against Chapple

Plaintiff could not have originally filed suit against Chapple in the District of Idaho. A transferee district qualifies under Section 1404(a) as one "where [the action] might have been brought" if, when the suit was commenced, "plaintiff ha[d] a right to sue in that district, independently of the wishes of defendant." Hoffman v. Blaski, 363 U.S 335, 344 (1960) (quotation

marks and citation omitted). "The 'where it might have been brought' language . . . incorporates the requirements of jurisdiction and proper venue." Mid Kan. Fed. Sav. & Loan Ass'n of Wichita ex rel. Resol. Tr. Corp. v. Orpheum Theater Co., 810 F. Supp. 1184, 1188–89 (D. Kan. 1992) (citing Hoffman, 363 U.S. at 342–44). Thus, "§ 1404(a) does not allow a court to transfer a suit to a district which lacks personal jurisdiction over the defendants, even if they consent to suit there." Chrysler Credit Corp. v. Country Chrysler, Inc., 928 F.2d 1509, 1515 (10th Cir. 1991).

Courts may exercise general personal jurisdiction over a nonresident defendant "if its contacts with the State are so continuous and systematic that the person is essentially at home in the State." XMission, L.C. v. Fluent LLC, 955 F.3d 833, 840 (10th Cir. 2020) (quotation marks and citation omitted). For individuals, the paradigm forum for the exercise of general personal jurisdiction is the individual's domicile. Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty., 582 U.S. 255, 255 (2017). For purposes of diversity jurisdiction, state citizenship is the equivalent of domicile. Crowley v. Glaze, 710 F.2d 676, 678 (10th Cir. 1983).

According to Chapple's notice of removal in the suit against him, Chapple is a resident of Washington, not Idaho. See Defendant Michael Chapple's Notice Of Removal in Haarslev, Inc. v. Chapple, No. 24-2003 (D. Kan.), ECF Doc. 1-1 filed January 5, 2024, ¶ 8. Chapple has submitted no other evidence that establishes his residency. While defendants argue that Chapple lives near the Idaho border and that transfer to the District of Idaho would be more convenient than Kansas, they have submitted no evidence that plaintiff could have originally filed suit against Chapple in Idaho. Chapple has not proven that the District of Idaho could have exercised general personal jurisdiction over him.

Further, Chapple has not shown that the District of Idaho could have exercised specific jurisdiction over him and thus he has not demonstrated that plaintiff could have originally filed

suit there. The minimum contacts test for specific jurisdiction includes two distinct requirements: (1) that Chapple "purposely directed" his activities at residents of the forum state, and (2) that plaintiff's alleged injuries "arise out of" forum-related activities. Old Republic Ins. Co. v. Cont'l Motors, Inc., 877 F.3d 895, 902, 904 (10th Cir. 2017) (quotation marks and citation omitted). Chapple has presented no evidence that he conducted his relevant business dealings with plaintiff in Idaho. Chapple has therefore not demonstrated that a court in the District of Idaho could have exercised specific personal jurisdiction over him.

### B. Plaintiff's Suits Against CMI And IME

Plaintiff could have originally filed suit against CMI and IME in the District of Idaho. They are both headquartered and organized in Idaho, so personal jurisdiction and venue are not in question.

## II. Whether Balance Of Factors Strongly Favors Transfer Of Plaintiff's Suits Against CMI And IME

Having determined that plaintiff could have brought suit against CMI and IME in the District of Idaho, the Court now weighs the factors outlined above to determine if they strongly favor transfer. They do not. Of the nine factors outlined above, CMI and IME contend that five strongly favor transfer: (1) plaintiff's choice of forum, (2) accessibility of witnesses and sources of proof, (3) costs of making necessary proof, (4) conflict of laws and (5) other practical considerations.

### A. Plaintiff's Choice Of Forum

Unless the balance of factors is "strongly in favor" of movants, the Court rarely disturbs plaintiff's choice of forum. Bartile, 618 F.3d at 1167. The choice, however, is not absolute and courts give "little weight" to plaintiff's choice "where the facts giving rise to the lawsuit have no material relation or significant connection" to plaintiff's chosen forum. Id. at 1168.

CMI and IME assert that plaintiff's residence is the only material relation to Kansas and that the facts giving rise to plaintiff's lawsuits have no connection to Kansas. CMI and IME have presented evidence that they (1) created the project quotes that form the basis of plaintiff's claims in Kansas, (2) manufactured the parts for which they allegedly overcharged plaintiff in Idaho and South Dakota, (3) sent completed parts to South Dakota and (4) received the payments which gave rise to plaintiff's claims in Idaho.

Plaintiff argues that the Court should not transfer its cases against CMI and IME because CMI and IME knew that plaintiff resided in Kansas when they entered into contracts with it. Plaintiff offers no evidence to support this argument, and whether defendants knew of plaintiff's residence in Kansas does not change the fact that many facts that gave rise to plaintiff's claims occurred outside of Kansas. The Court therefore gives reduced deference to this factor.

B.        Accessibility Of Witnesses And Sources Of Proof

Witness convenience is the most important factor under a Section 1404(a) analysis. Bartile, 618 F.3d at 1169. To establish inconvenience, defendants must (1) identify the witnesses to which a Kansas forum poses an inconvenience and their locations; (2) indicate the quality or materiality of their testimony; and (3) show that any such witnesses will refuse to come to trial or provide satisfactory deposition testimony or will require the use of compulsory process. See id.

CMI and IME argue that key witnesses—including (1) current and former employees, (2) Muir and (3) the Integra employees who helped relocate parts from CMI's office in Heyburn, Idaho after plaintiff terminated CMI's work on the Demkota Project—are located in Idaho and that it may be burdensome and costly for them to travel to Kansas to testify. Defendants also argue that all their sources of proof are located in Idaho. Although CMI and IME have identified these witnesses and their locations in their disclosures under Rule 26, Fed. R. Civ. P., they have not

(1) explained the materiality or indicated the quality of their employees' testimony or (2) made any attempt to show that the identified witnesses will refuse to come to trial in Kansas, that they would provide insufficient deposition testimony or that the use of compulsory process would be necessary.  See All Brands Distrib., LLC v. Vital Pharms., Inc., No. 18-cv-1354-EFM, 2019 WL 4958205, at *2 (D. Kan. Oct. 8, 2019) (in modern age, fact that witnesses live outside of Kansas does not weigh heavily when establishing that forum is inconvenient).  Defendants have also not identified, let alone substantiated, any sources of proof in Idaho that cannot be made available in Kansas for trial.

CMI and IME have failed to satisfy their burden that transfer of venue is necessary for the accessibility of witnesses and sources of proof.  On balance, this factor is neutral.

### C. Cost Of Making Necessary Proof

CMI and IME claim that they will suffer an "onerous financial burden" if they have to defend the cases in Kansas because they will have to bring their employees to Kansas to testify.  Third Amended Joint Motion For Transfer Of Venue (Doc. #43) at 8.  They also argue that plaintiff, a global corporation, is better suited to bear the cost of litigating the cases in Idaho, a state in which it is not a resident.  CMI's Senior Vice President of Consulting and Sales states that defending this case in Kansas would pose a financial hardship to the company.  CMI and IME have otherwise offered no evidence concerning the potential costs of litigating in Kansas.  Bartile, 618 F.3d at 1169 (absent evidence concerning potential costs of litigation, factor is neutral).  As such, this factor is neutral.

### D. Conflict Of Laws

In a diversity action, courts prefer that the action be adjudicated in a court in the state which provides the governing substantive law.  Id.  The conflict-of-laws factor receives less weight when

the case involves relatively simple legal issues, such as common law fraud and breach of contract claims.  Id.  Moreover, this factor is less significant because "federal judges are qualified to apply state law."  Id.

CMI and IME argue that the District of Idaho is better suited to adjudicate these cases because (1) Kansas choice of law rules for questions of contract performance follow the state in which the parties agreed to perform the contract and (2) the parties agreed that CMI and IME would perform their contracts with plaintiff in Idaho.  In addition to a claim for breach of contract, plaintiff brings unjust enrichment, conspiracy and tort claims against CMI and IME.  It is not apparent that Idaho's substantive law differs from Kansas's substantive law in any material way.  Also, the cases involve relatively simple legal issues and both courts are qualified to apply the controlling state law to plaintiff's claims.  This factor is therefore entitled to little weight.

E. Judicial Economy And All Other Practical Considerations

CMI and IME argue that judicial economy and all other practical considerations favor transfer to the District of Idaho because a court there could compel Muir's testimony and consolidate the cases against CMI, IME and Chapple with the one that plaintiff recently filed against Muir there.  The Court agrees that consolidation of the four cases makes practical sense, but it is defendants' burden to establish that these cases should be transferred under 28 U.S.C. § 1404(a).  CMI and IME have offered no evidence that Muir will refuse to testify in Kansas or that his testimony is critical to their defense.  On this record, the Court finds that transfer to the District of Idaho does not necessarily serve judicial economy or any other practical considerations.

F. Remaining Factors

-11-

-12-

Neither party suggests that transfer will implicate the enforceability of any judgment, that a local court needs to determine questions of local law or that docket congestion poses advantages or obstacles to a fair trial. These factors are neutral.

### G.    Weighing The Factors

The Tenth Circuit requires the moving parties to show that the relevant factors "strongly favor" transfer. Bartile, 618 F.3d at 1167 n.13. Although many of the facts which give rise to plaintiff's claims against CMI and IME appear to have taken place outside of Kansas, defendants have not shown that the relevant factors strongly favor transfer. The Court therefore overrules defendants' motion for transfer.

**IT IS THEREFORE ORDERED** that defendants' Third Amended Joint Motion For Transfer Of Venue (Doc. #43) filed June 21, 2024 is **OVERRULED.**

Dated this 22nd day of July, 2024 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge