## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **HAARSLEV, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION** |
| | ) | |
| **v.** | ) | **No. 23-2569-KHV** |
| | ) | |
| **TOM'S METAL ENTERPRISES, LLC** | ) | |
| **d/b/a INDUSTRIAL METAL** | ) | |
| **ENTERPRISES, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |
| **HAARSLEV, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 23-2575-KHV** |
| | ) | |
| **CHRISTENSEN MACHINE, INC.** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |
| **HAARSLEV, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 24-2003-KHV** |
| | ) | |
| **MICHAEL CHAPPLE,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

### MEMORANDUM AND ORDER

This matter comes before the Court on <u>Defendant Michael Chapple's Motion For Summary Judgment</u> (Doc. #123) filed April 4, 2025. Chapple asks the Court to enter summary judgment in his favor on each of plaintiff's six claims against him: (1) tortious interference with business expectancy; (2) tortious interference with contract; (3) civil conspiracy; (4) breach of Chapple's employment agreement; (5) breach of duty of loyalty; and (6) repayment of wages. Having

carefully reviewed the record, the Court finds that Chapple's motion should be sustained in part and overruled in part.[1]

## I.    Count I: Tortious Interference With Business Expectancy

The elements of a claim of interference with a business expectancy are (a) the existence of a business relationship or expectancy with the probability of future economic benefit to plaintiff; (b) knowledge of the relationship or expectancy by defendant; (c) that except for defendant's conduct, plaintiff was reasonably certain to have continued the relationship or realized the expectancy; (d) intentional misconduct by defendant to harm plaintiff's relationship or expectancy; and (e) damages suffered by plaintiff as a direct or proximate result of defendant's misconduct. See Resource Center for Indep. Living, Inc. v. Ability Res., Inc., 534 F. Supp. 2d 1204, 1212 (D. Kan. 2008); Ayres v. AG Processing Inc., 345 F. Supp. 2d 1200, 1210 (D. Kan. 2004).

According to the Pretrial Order (Doc. #119) filed April 1, 2025, (a) plaintiff had business relationships with its suppliers (Tom's Metal Enterprises, LLC d/b/a Industrial Metal Enterprises ["IME"] and Christiansen Machine, Inc. ["CMI"] on the Demkota project and JJC Fabrication and Mine Maintenance ["JJC"] on the FPL project) and its customers on those projects (New Angus, LLC for Demkota and FPL Foods, LLC for the FPL project); (b) as a result, plaintiff had an expectancy of the probability of future economic benefit; (c) Chapple was aware of plaintiff's expectation; (d) except for Chapple unilaterally approving invoices that exceeded plaintiff's contract prices and omitting information such as percentage increases from invoices, plaintiff

---

[1]    To expedite a ruling on this motion, because the case is set for trial on November 10, 2025, the Court is communicating the reasons for its decision without attempting to draft a legal treatise or cite volumes of well established but relevant case law.  The law in this area is clear and the Court has taken into account the authorities which are cited in the parties' briefs, along with other authorities.  If necessary for future proceedings, the Court may supplement this order with additional findings of fact or legal citations.

would have continued its relationships with its suppliers and customers and realized its expectations; (e) Chapple intentionally disrupted the relationships between plaintiff and New Angus and FPL Foods; and (f) Chapple's conduct damaged plaintiff both in monetary damages and its business reputation.  By way of damages, plaintiff seeks $858,312.43 in refunds that it had to pay New Angus on the Demkota project,[2] $151,335.83 in overpayments that Chapple approved for CMI[3] and $92,525.73 in overpayments that Chapple approved on the FPL project,[4] plus reputational damages in an amount to be determined by the jury at trial.[5]

Chapple seeks summary judgment on several grounds: (a) plaintiff cannot prove that he unilaterally approved invoices; (b) even if he did so, he did not thereby interfere with plaintiff's contracts on Demkota and FPL; (c) the record contains no evidence that plaintiff paid invoices

---

[2]    Plaintiff claims that to address the overbilling and forged purchase order issues on the Demkota project, it had to return $858,312.43 to New Angus to attempt to maintain that business relationship.

[3]    This amount apparently reflects salary and sales commission which CMI paid to Jeff Muir ($96,153.80) plus nine per cent of CMI's profit on materials because Chapple approved payments of 35 per cent, despite CMI's representation to plaintiff that it would profit only 26 per cent on materials ($55,182.03).  Plaintiff thus contends that Chapple approved $151,335.83 in overpayments to CMI.

[4]    Plaintiff claims that on March 2, 2022, it issued purchase orders to JJC for the FPL project.  Chapple had involved Muir and IME in that project, and plaintiff claims that Chapple instructed IME to increase its invoices to plaintiff by six percent and pay the difference to Muir.  Simultaneously, Chapple was having plaintiff pay Muir for his work on the same project.  By November 26, 2022, JJC had issued invoices that exceeded the purchase orders in the amount of $582,429.73.  Rather than requiring Muir and JJC to adhere to the agreement between plaintiff and FPL Foods, Chapple issued change orders and agreed to pay the excess charges.  As a result, plaintiff paid JJC $92,525.73 that it was not able to recover from FPL Foods.

[5]    The factual basis for this claim is unclear.  Troels Svendsen, plaintiff's president, gave deposition testimony that as a result of Chapple's conduct, *The Kansas City Business Journal* wrote a critical article about plaintiff and the FPL project.  Deposition of Troels Svendsen (Doc. #131-3) filed April 4, 2025 at 168:7–23.  Plaintiff does not attach a copy of the article or claim that it contained untruthful comments.  Plaintiff does not seek a specified amount of damages for reputational harm, and does not cite other evidence of reputational harm.

exceeding the IME contract price, which was an agreement to pay on a time and materials or cost plus basis; (d) plaintiff has no evidence that it was reasonably certain to have continued any relationship or realized any expectancy to profitably continue to do business with New Angus or FPL Foods, that it is not doing business with them or that plaintiff lost any business as a result of any of its payments to IME; (e) plaintiff has no evidence of intentional misconduct by Chapple; (f) plaintiff has no evidence of any economic benefit that it lost; and (g) as a matter of law, an employee acting on behalf of the employer cannot interfere with a contract of the employer because the employee and the employer are one and the same, relative to the customer, and he therefore was not an outsider interfering with any contracts between plaintiff and its customers.[6]

Plaintiff argues that summary judgment should be denied because (a) Chapple's role in approving invoices is disputed; (b) Chapple paid invoices exceeding the fixed contract price of $800,000, which constitutes overpayment of the IME contract; (c) Chapple's conduct damaged plaintiff's relationships with New Angus and FPL Foods; (d) no one is suggesting that Chapple selected vendors and approved invoices accidentally, and it was misconduct for him to instruct IME to engage Muir after CMI had fired him for mishandling work on the same project, to approve payments to IME for more than double the contract price and to try to cover up his actions by forging purchase orders; and (e) Chapple conspired with Muir and IME against plaintiff, and whether Chapple was acting within the scope of his employment is generally a jury question. O'Shea v. Welch, 350 F.3d 1101, 1106 (10th Cir. 2003);[7] see also CIT Financial Services, Inc. v.

---

[6]    In support of this argument, plaintiff cites Resource Center For Independent Living, Inc. v. Ability Resources, Inc., 534 F.Supp.2d 1204 (D. Kan. 2008); Laird Noller v. GMC Truck and Coach Division, 244 Kan. 612, Syll. 4, 772 P. 2d 271 (1989).

[7]    O'Shea belies any argument that summary judgment is not appropriate on the issue whether an employee was acting within the scope of his employment. There, the Tenth Circuit
(continued. . .)

Gott, 5 Kan. App. 2d 224, 230, 615 P.2d 774, 779 (1980), rev. denied, 228 Kan. 806 (1980) (where existence of agency disputed, existence or nonexistence ordinarily question of fact for jury).

    A.    Business Relationship With IME On Demkota Project

    As to its business relationship with IME, the gist of plaintiff's claim is that by approving invoices that exceeded a fixed price of $800,000, Chapple interfered with plaintiff's business relationship or expectancy with New Angus.  This argument is based on the false premise that plaintiff and IME had a fixed price contract for $800,000—a premise which the Court has resolved against plaintiff as a matter of law.[8]  Plaintiff does not argue that Chapple's approval of invoices was otherwise wrongful or identify any "probability" of future economic benefit that plaintiff reasonably expected to receive from New Angus after the conclusion of the Demkota project.  Moreover, aside from the theory that overpayments to IME exceeded a fixed price contract for $800,000, plaintiff has presented no evidence that Chapple wrongfully approved any invoices or that plaintiff suffered economic loss on account of wrongful conduct by Chapple in approving IME invoices.

    Plaintiff seeks to defeat summary judgment by citing Svendson's deposition testimony as follows:

> The owner of the Demkota plant discovered the purchase orders that Chapple forged, demanded that [plaintiff's] president travel to the plant location, and poked him in the chest while accusing him of photoshopping invoices.  (Doc. 131-3 at 131:5–132:4).  [Plaintiff] ultimately had to refund more than $800,000 on the Demkota project.  Since these events, [plaintiff] has not done anything with the representative for these project owners, Mr. Rempe, because he was very upset

---

[7] (. . .continued)
held that while genuine issues of material fact existed with respect to whether the employee's delivery of Chiefs tickets was within the scope of his employment, it need not address that issue because as a matter of law, his attempted stop at a service station for routine vehicle maintenance was outside the scope of his employment.

[8]    See Memorandum And Order (Doc. #151) filed June 2, 2025 at 10.

about being lied to by Chapple. (Doc. 131-3 at 159:4–160:13). [Plaintiff's] customers sensed and observed the stressful situation with the suppliers CMI and IME. (Doc. 131-3 at 167:24–168:4).

<u>Plaintiff's Response To Defendant Michael Chapple's Motion For Summary Judgment</u> (Doc. #134) filed April 25, 2025 at 16–17. Such evidence does not establish a genuine issue of material fact whether plaintiff reasonably entertained a "probability" of future economic benefit from its relationship with New Angus on the Demkota project, or that by making the alleged overpayments to IME, Chapple interfered with such business expectancy.

*If* plaintiff expected to receive future economic benefits from future projects with New Angus, but New Angus refused to participate because of Chapple's conduct on the Demkota project, and plaintiff therefore lost such business expectancies, such evidence would be easy to identify and singularly available to plaintiff. Plaintiff cites no such evidence, however, and it has not created a genuine issue of material fact on its theory that Chapple interfered with its business relationships and expectancies of future economic benefit. To defeat summary judgment on this issue, plaintiff must provide objective evidence showing a reasonable likelihood of economic benefit, not just wishful thinking or speculative potential hopes of attracting new business. <u>See</u> <u>Burcham v. Unison Bancorp, Inc.</u>, 276 Kan. 393, 395, 77 P.3d 130, 135 (2003) (plaintiff must have reasonable certainty of continued relationship or realized the expectancy).

To further demonstrate the ill-conceived nature of this claim, the Court notes that plaintiff's theory of damages is fundamentally at odds with a theory that Chapple interfered with business expectancies. By definition, expectancies relate to future events. By way of damages, on Count I, plaintiff only seeks to recapture funds which it expended on past projects. Plaintiff cites absolutely no evidence of damages flowing from interference with *future* expectancies.

B.    Business Relationship With CMI On Demkota And FPL Projects

Before plaintiff contracted with IME to supply parts for the Demkota project, it had a contract with CMI to perform that work.  The Pretrial Order alleges that (a) plaintiff had a business relationship with CMI, which provided labor and materials for plaintiff's customers on the Demkota and FPL projects; (b) that as a result of this relationship, it had an expectancy of the probability of future economic benefit to it; (c) that Chapple was aware of its expectation; and (d) that but for Chapple's acts and omissions of unilaterally approving invoices that exceeded plaintiff's contract prices and omitting information such as percentage increases from invoices that plaintiff paid, plaintiff would have continued its relationship with CMI and realized the expectations.  Chapple seeks summary judgment, arguing that (a) plaintiff cannot prove that he unilaterally approved invoices; (b) even if he did so, he did not thereby interfere with plaintiff's contracts with Demkota and FPL; (c) plaintiff has no evidence that it was reasonably certain to have continued any  relationship or realized any expectancy to profitably continue to do business with Demkota and FPL or that it is not doing business with them; (d) plaintiff has no evidence of intentional misconduct by Chapple; (e) plaintiff has no evidence of any economic benefit that it lost; and (f) as a matter of law, an employee acting on behalf of the employer cannot interfere with a contract of the employer.

In response to Chapple's motion for summary judgment on this claim, plaintiff makes no mention of CMI except to state that "it was misconduct for [Chapple] to instruct IME to engage Jeff Muir after CMI had fired Jeff Muir for mishandling work on the same project."  Plaintiff's Response To Defendant Michael Chapple's Motion For Summary Judgment (Doc. #134) at 17. Such evidence does not establish a genuine issue of material fact whether plaintiff reasonably entertained a probability of future economic benefit from its relationship with CMI on the Demkota

or FPL projects, or that by making any overpayments to CMI, Chapple interfered with such business expectancies. Moreover, the Court's comments regarding the illogic of plaintiff' damage claim apply equally to this claim.

      C.      Business Relationship With FPL Foods

The Pretrial Order alleges that (a) on March 2, 2022, plaintiff issued fixed price purchase orders to JJC for the FPL project, which Chapple also managed and in which he had involved both Muir and IME; (b) Chapple instructed IME to increase its invoices to plaintiff by six per cent and pay the difference to Muir, while Chapple was unilaterally paying Muir for his work on the same project with plaintiff's funds; (c) by November 26, 2022, JJC invoices exceeded the purchase orders by $582,429.73; (d) rather than requiring Muir and JJC to adhere to the agreed prices, Chapple paid the excess charges; and (e) as a result, plaintiff had to pay JJC $92,525.73 that it was not able to recover from the project owner, FPL Foods.

Chapple seeks summary judgment because (a) plaintiff cannot prove that he unilaterally approved invoices; (b) even if he did so, he did not thereby interfere with plaintiff's contract on FPL Foods; (c) plaintiff has no evidence that it was reasonably certain to have continued any relationship or realized any expectancy to profitably continue to do business with FPL, that it is not doing business with them or that plaintiff lost any business as a result of any payments to IME; (d) plaintiff has no evidence of intentional misconduct by Chapple; (e) plaintiff has no evidence of any economic benefit that it lost; and (f) as a matter of law, an employee acting on behalf of the employer cannot interfere with a contract of the employer.

As to FPL Foods, in its entirety, plaintiff's opposition consists of the following citation to Svendsen's deposition testimony: "*The Kansas City Business Journal* wrote a critical article about Haarslev as a result of Chapple's conduct, and that article concerned FPL." Plaintiff's Response

<u>To Defendant Michael Chapple's Motion For Summary Judgment</u> (Doc. #134) at 16.  Plaintiff

argues that "[t]aken in the light most favorable to Haarslev, this evidence is more than sufficient

to illustrate some of the damage done by Chapple to Haarslev's business expectancies."[9]  <u>Id.</u>

Such evidence, to put it mildly, does not establish a genuine issue of material fact whether

plaintiff reasonably entertained a "probability" of future economic benefit from its relationship

with FPL Foods, or that by making any overpayments to IME or JJC, Chapple interfered with such

business expectancy.  All of the Court's comments with regard to plaintiff's purported business

expectancies regarding IME, CMI and New Angus apply equally here, as do the Court's

observations about the illogic of plaintiff's theory of damages on this issue.

D.    <u>Summary</u>

Chapple is entitled to judgment as a matter of law on plaintiff's ill-conceived claim for

tortious interference with future business relationships or expectancies.  While some fact issues

are genuinely disputed (<i>e.g.</i>, whether Chapple exercised functional authority to approve invoices

and authorize payments, whether he intended to harm plaintiff and whether he was acting within

the scope of his employment), plaintiff has failed to identify evidence that it reasonably entertained

an identifiable, non-speculative probability of future economic benefit from its relationships with

IME, CMI, New Angus, JJC or FPL Foods, that Chapple interfered with such business

expectancies or that plaintiff's alleged damages are properly recoverable under Count I.

---

[9]      The <u>Pretrial Order</u> alleges that "having to engage in public lawsuits with its vendors to
recover lost funds, Haarslev's reputation has been harmed. Troels Svendsen stated in his 30(b)(6)
deposition for Haarslev that an article was posted in a local Business Journal discussing the
allegations in the lawsuits. Haarslev's client FPL expressed concerns about the article after its
publication." <u>Pretrial Order</u> (Doc. #119) at 15.  Such facts are not in the summary judgment record.

## II.        Count II: Tortious Interference With Contracts

Plaintiff claims tortious interference with contract, as follows: (a) plaintiff entered into purchase contracts with IME , CMI and JJC; (b) Chapple was aware of these contracts; (c) Chapple encouraged IME to add percentage increases on plaintiff's invoices to pay Muir, unilaterally approved invoices from IME, CMI and JJC in excess of contract prices and forged purchase orders, thus causing plaintiff to breach its contracts with New Angus on the Demkota project (causing plaintiff to pay $1.2 million more than the contract price) and FPL on the FPL Foods project (causing plaintiff to pay $582,429.73 more than the contract price); (d) plaintiff had to rectify the breach of its agreements with those customers at its own expense; (e) Chapple's conduct was intentional and lacked justification; and (f) as a result, plaintiff was damaged, at a minimum by the $858,312.43 which it had to return to New Angus on the Demkota project and at a minimum of $92,525.73 which it lost but did not refund on the FPL Foods contract.

To prevail on a claim for tortious interference with a contract under Kansas law, plaintiff must prove (a) the existence of a contract between plaintiff and a third party; (b) defendant's knowledge of the contract; (c) intentional procurement of its breach; (d) absence of justification (*i.e.* defendant's actions were wrongful or improper); and (e) damages resulting from the breach. Dickens v. Snodgrass, Dunlap & Co., 255 Kan. 164, 169, 872 P.2d 252, 257 (1994); Byers v. Snyder, 44 Kan. App. 2d 380, 394, 237 P.3d 1258, 1269 (2010).

Chapple seeks summary judgment, arguing that (a) he did not unilaterally approve invoices; (b) payments to IME, CMI and JJC did not cause plaintiff to breach its contracts with New Angus or FPL Foods, and plaintiff has not alleged how payments to them were related to purchase orders for the Demkota and FPL projects; (c) plaintiff has never complained about JJC invoices; (d) he did not intend to harm plaintiff; (e) he acted solely on behalf of plaintiff so he and

plaintiff are one and he cannot have interfered with its contracts; (f) he did not induce any third person not to perform a contract; and (g) he did not forge any purchase order on the Demkota or FPL projects.

Plaintiff only responds to arguments which Chapple did not raise in his argument with respect to tortious interference with a business expectancy (Count I). The Court has already addressed those arguments. By way of additional argument, plaintiff contends that (a) Chapple did cause plaintiff to breach its contracts because the Demkota project was for a fixed price and by overpaying CMI and IME, Chapple caused plaintiff to pass expenses on to New Angus which exceeded the $800,000 contract price; (b) Chapple caused plaintiff to breach its contract with FPL Foods by having JJC use Muir as a consultant for work on the FPL project and agreeing to "up payment" to JJC/Muir; (c) in violation of plaintiff's agreement with FPL Foods, Chapple tried to pass on to FPL Foods the cost of Muir's retention; and (d) whether Chapple forged a purchase order is a factual dispute for the jury.

As previously noted, plaintiff's argument that Chapple caused it to breach its contract with New Angus on the Demkota project is based on the false premise that it had a fixed price contract with IME for $800,000—a premise which the Court has resolved against plaintiff as a matter of law. Accordingly, plaintiff has no actionable claim that Chapple caused plaintiff to breach its contract by paying IME more than $800,000. Plaintiff cites no other theory of how it breached its contract with New Angus on the Demkota project. Chapple is therefore entitled to summary judgment on this issue.

As to plaintiff's second argument, the record does not reveal a genuine issue of material fact whether Chapple caused plaintiff to breach its own contract with FPL Foods. In fact, it reveals the opposite: that plaintiff agreed to absorb a loss of $582,429.73 to *avoid* a breach of its agreement

with FPL Foods.  The <u>Pretrial Order</u> alleges that plaintiff "breached its agreement with FPL on the FPL Foods project by exceeding the contract price on Purchase Order #16825 by $582,429.73," but that it *rectified* the breach by paying that amount to FPL Foods.  <u>Pretrial Order</u> (Doc. #119) at 36.

Chapple may have otherwise interfered with the contract between plaintiff and FPL Foods, but plaintiff does not allege any interference except inducing a breach.  Kansas courts have consistently held that interference that does not result in a breach does not sustain a claim for tortious interference with an existing contract; the tort is focused on wrongful conduct that causes a third party to breach a legally binding agreement and is thus distinct from tortious interference with a prospective business advantage or expectancy, which does not require an actual breach— only the loss of a probable future economic benefit.  <u>Turner v. Halliburton Co.</u>, 240 Kan. 1, 12, 722 P.2d 1106, 1115 (1986).

To state the obvious, absent an actual breach of contract by plaintiff on the FPL Foods contract, plaintiff cannot prevail on the theory that Chapple induced plaintiff to breach its contract with FPL Foods.  In this regard, plaintiff's remedy is more properly for tortious interference with business relationships or expectancies (a theory that is foreclosed on other grounds), civil conspiracy, breach of fiduciary duty or breach of an employment agreement, as discussed below. As to Count III, Chapple's motion for summary judgment is sustained.[10]

---

[10]    Even if plaintiff could proceed on this claim without an actual breach, in view of rectification, it would still need to prove actual causation and the fact that it suffered damages. These issues would be complicated by the fact that arguably, plaintiff's harm was proximately caused by its voluntary decision to settle, not defendant's conduct, and arguably, in rectifying the breach, plaintiff voluntarily waived damages.  The fact of rectification might go to causation and damages, not necessarily to liability.  The parties have not briefed this issue, but the Restatement (Second) of Torts, Section 774A(2) provides as follows:

In an action for interference with a contract by inducing or causing a third person

(continued. . .)

-12-

## III. Count III: Civil Conspiracy

Plaintiff claims that (a) Chapple conspired with IME to overcharge plaintiff and pay those funds to Muir and/or himself, for their personal financial gain and to further Chapple's relationship with IME and Muir over the interests of plaintiff; (b) Muir, IME and Chapple reached a meeting of the minds as to the method and purpose of the conspiracy at their in-person meeting on March 22, 2022; (c) Chapple approved the payments to IME and had plaintiff pay the invoices; (d) the payments to IME which Chapple approved were wrongful; (e) the agreement with IME and the approval of the payments to IME, constitute more than one unlawful overt act; and (f) the conspiracy with IME damaged plaintiff.[11] Specifically, plaintiff claims damages of $858,312.43 in refunds that it had to pay to New Angus on the Demkota project, $151,335.83 in overpayments that Chapple approved for CMI, $92,525.73 in overpayments that Chapple approved on the FPL project and reputational damages.

Under Kansas law, the elements of civil conspiracy are (a) two or more persons; (b) an object to be accomplished; (c) a meeting of the minds on the object of the conspiracy; (d) one or more unlawful overt acts and (e) damages as a proximate result of the conspiracy. Stoldt v. City

---

[15] (. . .continued)

> to break the contract with the other, the fact that the third person is liable for the breach does not affect the amount of damages awardable against the actor; but any damages in fact paid by the third person will reduce the damages actually recoverable on the judgment.

Restatement (Second) of Torts § 774A(2). On the facts of this case, if plaintiff were to receive the $582,429.73 judgment which it requests from Chapple, the amount recoverable would be offset to zero by the exact amount which plaintiff paid—$582,429.73.

[11] The conspiracy between Muir and Chapple is allegedly evidenced by their desire to be the only ones from their respective employers in contact about the Demkota project and Chapple forging purchase orders to hide their conduct.

of Toronto, 234 Kan. 957, 678 P.2d 153 (1984); Brinker v. McCaslin, 63 Kan.App.2d 724, 738, 538 P.3d 1101 (2023).

Chapple seeks summary judgment, arguing that (a) defendants did not agree or conduct an unlawful act, since IME and plaintiff agreed on a time and materials contract for the Demkota project; (b) IME did not conspire with Chapple to do anything to harm plaintiff and Chapple received no personal gain; (c) Chapple confirmed completion of work by vendors but the finance department, not Chapple, approved payment of invoices; and (d) the jury should get to hear both versions, look the conspirators in their eyes and determine their credibility.

Here, the record presents genuine issues of material fact whether Chapple conspired with IME and Muir to overcharge plaintiff and pay those funds to Muir and/or himself, for their personal financial gain and to further Chapple's relationship with IME and Muir over the interests of plaintiff. The record does not reflect that Chapple received anything of value for his role in the conspiracy, other than to benefit his so-called "friend," and evidence of Chapple's motive for participating in the alleged conspiracy seems to be quite thin. The Court's job does not include weighing the evidence, however, and it holds that plaintiff has stated actionable damage claims for civil conspiracy as they relate to plaintiff's damage claim of $858,312.43 in refunds to New Angus on the Demkota project and $92,525.73 in overpayments on the FPL Foods project. Plaintiff has not shown that all of its damages based on payments to CMI occurred after March 22, 2022, when the conspiracy allegedly formed at the in-person meeting of Chapple, Muir and IME,[12] and Chapple may be entitled to judgment as a matter of law on a portion of the alleged damages.

---

[12]    The Pretrial Order alleges that on September 21, 2021, Muir issued Invoice #93308 for $600,000, which Chapple paid in full and that on March 17, 2022, Muir issued Invoice #93672 for $125,000, which Chapple also paid in full. The record does not disclose the dates of those payments, or whether they occurred before or after the commencement date of the conspiracy.

Plaintiff has not demonstrated a genuine issue of material fact with regard to reputational damages on account of the alleged conspiracy, and Chapple is entitled to summary judgment on that issue. Chapple's motion for summary judgment on Count III is otherwise overruled.

## IV.    Count IV: Breach Of Employment Agreement

Count IV alleges that (a) Chapple and plaintiff entered into an employment agreement for valid and sufficient consideration; (b) plaintiff performed all of its obligations thereunder; (c) Chapple breached Section 6(d) of the agreement because he contracted with CMI and IME and "plaintiff's lawyers alleged that CMI and IME were 'in competition with Plaintiff;'" (d) Chapple engaged in activities that were not in furtherance of his legitimate job duties, which included supporting successful project execution and optimizing customer solutions; (e) by approving upcharges for IME, CMI, Muir and JLM,[13] which caused plaintiff to vastly exceed the contract prices between plaintiff on the Demkota and FPL projects, Chapple did the opposite of optimizing customer results; (f) Chapple acted to further his own relationship with IME, CMI, JLM and Muir; (g) pursuant to the employment agreement, Chapple went "in competition" with plaintiff; and (h) Chapple's breaches damaged plaintiff.

Chapple seeks summary judgment, arguing that (a) plaintiff has admitted that IME and CMI were not in competition with it; (b) plaintiff knew from the outset that CMI and IME were working with Chapple; (c) Chapple did not approve upcharges but merely confirmed that fabrication work had been completed satisfactorily by the vendors and plaintiff's finance department determined whether the charges conformed to purchase orders; and (d) plaintiff has no evidence that Chapple damaged it by "furthering his own relationship" with vendors.

---

[13]    After Muir left CMI, he established JLM Management, LLC ("JLM").

Plaintiff responds that (a) Chapple did approve the upcharges; (b) "competitor" is a defined term in Chapple's employment agreement and IME and CMI meet that specific definition; and (c) the record contains sufficient evidence to present the breach of employment contract issue to the jury.

On or about December 2, 2020, plaintiff and Chapple entered into an "Employment, Non-Competition, Non-Solicitation and Arbitration Agreement."  Pursuant to the Section 6(b) of the agreement, Chapple agreed that during the term of his employment and for one year thereafter, he would not directly or indirectly solicit any customer, vendor or supplier in an effort to further a business relationship with such party, if such relationship could reasonably be determined to be in competition with employer.  Pursuant to Section 6(d) of the Employment Agreement, "In Competition With" is defined as "any company, business, enterprise, individual, or other entity engaged in the business of manufacturing processing equipment for food, food by-product and/or pet food."  Employment, Non-Competition, Non-Solicitation And Arbitration Agreement (Doc. #134-2) filed April 25, 2025 at 3.  Plaintiff claims that CMI, IME, JJC, Muir and JLM engaged in the business of manufacturing processing equipment for food, food by-product and/or pet food, and that by contracting with them on its behalf, Chapple had gone into competition with it in violation of the employment agreement.

In his Rule 30(b)(6) deposition, and as plaintiff's president, Svendsen testified that CMI and IME were not in competition with plaintiff; rather, they were plaintiff's suppliers.  Indeed, the record does not reflect that CMI and IME engaged in the business of manufacturing processing equipment for food, food by-product and/or pet food, or that they did so in any capacity except on behalf of plaintiff.  Plaintiff's position defies the commonsense language of the employment agreement, and the record does not even establish that factually, CMI and IME are competitors of

plaintiff.  Furthermore, plaintiff's request for damages for breach of the non-competition clause is completely unhinged from any damage conceivably caused by any theoretical competition in breach of the agreement.[14]  Chapple is therefore entitled to summary judgment on the theory that he breached the employment agreement by going into competition with plaintiff.

The record reflects a genuine issue of material fact, however, whether by approving upcharges for IME, CMI, Muir and JLM which caused plaintiff to exceed its contract prices on the Demkota and FPL projects, Chapple engaged in activities that were not in furtherance of his legitimate job duties.  Chapple is not entitled to summary judgment on this claim.

## V.    Count V: Breach Of Duty Of Loyalty

The Pretrial Order alleges that (a) Chapple had a duty of loyalty to plaintiff as his employer; (b) as Sales & Project Engineer for plaintiff, Chapple was acting as a fiduciary; (c) Chapple breached his duties to plaintiff both under Section 6 of his Employment Agreement and his common law duty of loyalty by acting outside of the scope of his authority as a project manager, as defined by plaintiff's standard operating procedures regarding selecting, monitoring, and paying vendors, and approving billing from vendors that was excessive under the agreed purchase orders; and (d) plaintiff incurred damages as a result.

Under Kansas law, a duty of loyalty is an implied obligation, even without a written contract, and is grounded in the common law of agency.  See Gillespie v. Martin, Pringle, Oliver,

---

[14]    For breach of the non-competition agreement, plaintiff seeks $858,312.43 in refunds that it had to pay New Angus on the Demkota project; $151,335.83 in overpayments that Chapple approved for CMI; $92,525.73 in overpayments that Chapple approved on the FPL Foods project; $4,273.50 for two gear boxes for which Chapple failed to account on the Demkota project; and unspecified reputational damages.  As noted elsewhere, the record does not establish a genuine issue of material fact regarding reputational damages.  Moreover, the record does not reveal a coherent theory how these damages resulted from Chapple's alleged "competition" with plaintiff.

Wallace & Swartz, 258 Kan. 91, 93, 899 P.2d 478, 480 (1995). To prevail on a claim for breach of a fiduciary duty, an employer must show (a) the existence of a duty arising from a fiduciary relationship; (b) a breach of the duty; and (c) an injury resulting proximately from the breach. Stroud v. Ozark Nat'l Life Ins. Co., 564 P.3d 725, 731–32 (Kan. 2025).

Chapple seeks summary judgment on the claim that he breached his duty of loyalty, arguing that (a) he neither paid nor unilaterally approved vendors' billing; (b) plaintiff admitted that CMI, IME and other vendors were properly hired; (c) plaintiff did not object to IME or CMI's contracts with plaintiff; and (d) plaintiff knew of nothing improper about any relationship between IME and plaintiff or CMI and plaintiff. These arguments do not fairly address the substance of the claim that Chapple breached his implied duty of loyalty, and the record is replete with genuine issues of material fact on that score. Specifically, plaintiff has established a genuine issue of material fact whether Chapple acted outside the scope of his authority as a project manager, as defined by plaintiff's standard operating procedures, and otherwise failing to act in his employer's best interest.

For reasons stated above, however, Chapple is entitled to summary judgment on plaintiff's claim that he breached his duty of loyalty to plaintiff by engaging in competition with plaintiff in violation of Section 6 of his employment agreement.

Finally, Chapple is not entitled to summary judgment on plaintiff's claim that he was acting as a fiduciary in his capacity as a Sales & Project Engineer for plaintiff. Under Kansas law, not all employees owe fiduciary duties. Corporate officers and directors have a fiduciary duty to act in the best interest of the corporation. Burcham v. Unison Bancorp., 276 Kan. 393, 394 77 P.3d 130, 134 (2003). An employee may become a fiduciary when the employer imparts a position of peculiar confidence to him or he is in a position to have and exercise—and does have and

-18-

exercise—influence over the employer.  See Denison State Bank v. Madeira, 230 Kan. 684, 692, 640 P.2d 1235, 1241 (1982).  The analysis whether a fiduciary relationship exists is fact-specific. Denison State Bank v. Madeira, 230 Kan. 684, 691, 640 P.2d 1235, 1241 (1982).

Chapple makes much of plaintiff's admissions that IME did everything it could do to produce quality equipment in a timely manner for plaintiff, but this fact, and others which he cites, do not directly address all relevant factors which pertain to whether he owed plaintiff a fiduciary duty or whether he breached such duty.  On this record, the Court cannot undertake the fact-specific analysis necessary to conclude that as a matter of law, Chapple did not occupy a fiduciary role in his employment with plaintiff.  Accordingly, his motion for summary judgment on this issue is overruled.

## VI.    Count VI: Faithless Service Doctrine

Chapple argues that (a) Count VI is not a cause of action, but rather a measure of damages; (b) plaintiff has no evidence to support its breach of duty of loyalty claim and it cannot establish the faithless servant doctrine or civil conspiracy claims; and (c) this remedy has been reserved for situations when a faithless servant has personally profited in substantial amounts at the expense of the principal, while plaintiff has no evidence that Chapple personally profited in any manner.  The Court has already ruled that repayment of wages under the faithless servant doctrine is a measure of damages, and plaintiff does not claim that the faithless servant doctrine is a separate cause of action for the purposes of trial.  Chapple's motion for summary judgment on this issue is therefore overruled as moot.

**IT IS THEREFORE ORDERED** that Defendant Michael Chapple's Motion For Summary Judgment (Doc. #123) filed April 4, 2025 **is SUSTAINED as to Count I (tortious interference with business relationships or expectancies); Count II (tortious interference**

**with contract); Count IV (breach of non-competition clause in plaintiff's employment agreement); and Count V (breach of duty of loyalty by engaging in competition with plaintiff). Chapple's motion is OVERRULED as to Count III (civil conspiracy); Count IV (breach of Chapple's employment agreement by failure to perform legitimate job duties); and Count V (breach of duty of loyalty in performance of job duties for plaintiff. Chapple's motion is OVERRULED AS MOOT with respect to Count VI (faithless service doctrine and repayment of wages). Chapple's motion is SUSTAINED as to all claims for reputational damage to plaintiff.**

Dated this 3rd day of June, 2025 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge